WILLIAM ALTVATER and ELIZABETH, his wife, *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Liability of the Mayor and City Council of Baltimore for the Consequences of Neglect on the part of the Board of Police Commissioners.*

The Board of Police Commissioners are not made authorities of the city of Baltimore as such, by any provision of law. Although they exercise authority within the city, for public purposes and objects, and to aid in maintaining good order therein, they have not derived their power from the corporation, nor have they been made amenable to the city for the faithful discharge of their duties.

Amongst their other duties, they are specifically required "to prevent and remove nuisances within the city."

A person, while passing along one of the streets of the city of Baltimore, was thrown down and injured by being run against by a sled, going along the street at a rapid rate of speed. In an action against the city to recover damages for the injury, HELD:

That the city was not responsible, inasmuch as it had no control over the Board of Police Commissioners, who had exclusive charge of the removal of the nuisance complained of.

APPEAL from the Superior Court of Baltimore City.

This was an action to recover damages from the defendant, because of an accident to the plaintiff, Elizabeth Alt-

vater, which happened under the circumstances detailed in the following statement of facts:

The plaintiff, Elizabeth Altvater, when passing along Saratoga street, in the winter of 1868, was thrown down by being run against by a sled going along that street at a rapid rate of speed. She was seriously injured by the accident. Before the happening of this accident, a large crowd of persons congregated daily on the said street, and they had been in the habit of so doing for weeks previously, and this crowd had rendered travel on the street inconvenient and dangerous, from the speed and number of the sleds used, thereby becoming a nuisance. A police officer said that he had arrested several of these persons, and they had been discharged by the magistrate.

Thereupon the defendant's counsel submitted the following prayer, which was granted by the Court.

The defendant prays the Court to instruct the jury, that upon the case stated by the plaintiff, if the same were proven, the plaintiff would not be entitled to recover, and their verdict must be for the defendant.

From the granting of this prayer, the present appeal was taken.

The cause was argued before Bartol, C. J., Stewart, Brent, Miller and Alvey, J.

*William H. Cowan,* for the appellants.

The public are entitled to protection from liability to injury, by an abatement of a nuisance. The case of *Marriott vs. The Mayor and City Council of Baltimore,* 9 *Md.,* 160, establishes this principle beyond controversy, as well as the cases of *Wendell vs. Troy,* 39 *Barb.,* 329; *The Mayor of New York vs. Furze,* 3 *Hill,* 612; *Conrad vs. Ithaca,* 16 *N. Y.,* 163; *The People vs. Albany,* 11 *Wendell,* 539; *Hall vs. Manchester,* 40 *N. Hamp.,* 415; *Commonwealth vs. Springfield,* 7 *Mass.,* 13.

The Mayor and City Council of Baltimore recognize their duty and obligation to protect the citizens in this respect, by passing ordinances relative thereto. *Ordinance* 18, *Rev. Ord.*, 1858, and numerous others.

The provisions of the Legislature, respecting the police, are in no way connected with this case. The police execute all processes to enforce sanitary purposes, and for the violation of ordinances. The express injunction of the Act of Assembly imposes on the police the duty of obeying and enforcing all ordinances. Article 4, sec. 808 of the Code of Public Local Laws, as contained in the supplement to the Code, requires the police " to enforce all laws and all ordinances of the Mayor and City Council of Baltimore, not inconsistent, &c." The idea is incomprehensible, that a ministerial body created for specific objects, exempts a corporation from liability, because of the appointing power being located elsewhere. Is there any responsibility for omission of duty on the part of the corporation? If there is, where is the line? It is drawn and defined by the duties assumed by the city in pursuance of the powers of legislation conferred on it. That line, which locates the limits of the corporate powers, prescribes its duties. And not a particle of it is effaced or obliterated in relation to streets, lanes or alleys, and nuisances therein, by the Police Law of 1867, ch. 367. *Duckett vs. Commissioners of Anne Arundel County*, 20 *Md.*, 468.

*Wm. Henry Norris*, for the appellee.

It being made the duty of the Board of Police to prevent the matters complained of, and it being expressly provided that the city "shall have no control over said Board, or any officer of police, policeman or detective appointed thereby," the city cannot be held responsible for any failure of the said Board, or its officers, to perform the duties imposed upon them by law. *Altemus vs. Mayor,*

*&c.,* 6 *Duer*, 446; *Hickok vs. Plattsburgh*, 15 *Barbour*, 427; *Barry vs. St. Louis*, 17 *Mo.*, (2 *Bennett*,) 121; *Martin vs. Brooklyn*, 1 *Hill*, 545; *Commissioners of A. A. Co. vs. Duckett*, 20 *Md.*, 468, *and cases there cited.*

There is nothing whatever in the statement of facts to show that there was any dereliction of duty on the part of the Board of Police, or its officers; on the contrary, it appears that an officer of the force had done all that he could to remedy the evil. *Buttrick vs. Lowell*, 1 *Allen*, 172.

STEWART, J., delivered the opinion of the Court.

It is assumed, in the briefs, upon which this case was submitted, that the facts agreed to, constitute good ground of action to entitle the appellant to recover, if by any statute law of the State, existing at the time, it was made the duty of the Mayor and City Council of Baltimore " to have prevented or removed the nuisance."

Upon this hypothesis, we shall determine the question at issue.

The 4th Art. sec. 808 of the Code of Pub. Loc. Laws, makes it the duty of the Board of Police to " prevent and remove nuisances" in all the streets of the city of Baltimore, and the supplementary Act of 1867, ch. 367, imposes similar duty upon the Board of Police Commissioners, as they are denominated in the supplement. Whilst it is the duty of the Mayor and City Council of Baltimore, to pass all proper ordinances authorized by their charter in regard " to the prevention and removal of nuisances," and which may not conflict with the duties imposed upon the Board of Police Commissioners, (Art. 4, sec. 32, Code of Pub. Loc. Laws,) they are deprived of the power of enforcing them.

That duty has been imposed upon the Board of Police Commissioners, who have been substituted as the general agency, to enforce the ordinances of the city, and the

Mayor and City Council are prohibited from levying or collecting any tax, or appropriating any money for the payment of any other police. 1867, ch. 367.

The Board of Police Commissioners are not made authorities of the city as such, by any provision of law; that part of the 4th Art., sec. 822 of the Pub. Loc. Laws, which made them such, having been repealed by the supplementary act of 1867, ch. 367.

Art. 4, sec. 32 of the Public Loc. Laws, provides that "no ordinance heretofore passed, or that shall hereafter be passed, by the Mayor and City Council of Baltimore, shall hereafter conflict or interfere with the powers or the exercise of the powers of the Board of Police of the city of Baltimore hereinafter created; nor shall the said city, or any officer or agent of the Corporation of said city, or of the Mayor thereof, in any manner impede, obstruct, hinder or interfere with the said Board of Police, or any officer, agent, or servant thereof or thereunder."

The supplement of 1867, ch. 367, forbids any construction that would give any control over said Board, or any officer of police appointed thereby. Although they exercise authority, within the city, for public purposes and objects, and to aid in maintaining good order therein, they have not derived their power from the corporation, nor have they been made amenable to the city for the faithful discharge of their duties.

They have been organized as a distinct body of public or State officers "strictly within the jurisdiction of the State authority." *Mayor and City Council of Baltimore vs. Howard,* 2 *Md.,* 357.

As such, each member of the Board gives bond to the State for the due discharge of duty. 1867, ch. 367.

Amongst their other duties, they are specifically required "to prevent and remove nuisances within the city."

Under these circumstances, the duties and obligations

of the Mayor and City Council of Baltimore, must be taken as qualified and limited by the provisions of the law creating the Board of Police Commissioners.

When the case of *Marriott vs. The Mayor and City Council of Baltimore,* was adjudicated in 1856, the original Act of 1796, ch. 48, incorporating the city of Baltimore, was in full force, unimpaired by the subsequent legislation establishing the Board of Police Commissioners. *Code of Pub. Loc. Laws, Art.* 4, *sec.* 806, *and Act of* 1867, *ch.* 367.

According to the law then existing, the city of Baltimore possessed not only the power to pass ordinances " to prevent and remove nuisances," but the unrestricted ability through its own police to enforce them.

The Mayor and City Council was then held bound, because possessed of ample power, and upon the ground " that it is a well-settled principle, that when a statute confers a power upon a corporation for the public good, the exercise of the power is not discretionary, but imperative," and the words " power and authority," may be construed " duty and obligation."

Where the power and authority are conferred by the statute, the party possessing them becomes necessarily responsible in actions like this for their proper exercise; but it is equally true that in the absence of such power and authority, there can be no such consequent obligation.

Treating the corporation as thus endowed, it was held that " in order that the city should relieve itself from obligation, it was not only necessary that it should pass ordinances sufficient to meet the exigencies of the case, but it was also bound to see that the ordinances were enforced —to have enforced them was necessary to bring the city within the saving of having used reasonable care and diligence in removing the obstruction complained of." The city might, at the same time, defend herself against complaints of negligence or injury by showing the use of due diligence.

"A vigorous effort to enforce their ordinances would have amounted to due diligence."

It is but just that responsibility for the proper discharge of duty should result from the power to perform the duty, and if a party is to be held responsible for the conduct of another party charged with the performance of duty, over whom he can exercise no control, some law creating such responsibility ought to be shown.

Without clear and specific provision of law, it would be a harsh construction to hold the Mayor and City Council of Baltimore responsible for the wrong and injury complained of in this case, in not preventing and removing the alleged nuisance, whilst they not only had not the power to prevent it, but were emphatically forbidden to interfere with the power over the subject-matter, given to another body of officials.

Under such circumstances, and in the absence of any proof of neglect on the part of the Mayor and City Council of Baltimore, occasioning the injury complained of, they cannot be held liable in this action, and the ruling of the Court below must be affirmed.

*Judgment affirmed.*

(Decided 10th December, 1869.)